(No. 11877.—Reversed and remanded.)

THE PEOPLE'S GAS LIGHT AND COKE COMPANY, Appellant,
*vs.* HENRY STUCKART, County Treasurer, Appellee.

*Opinion filed December 18, 1918—Rehearing denied Feb. 5, 1919.*

1. TAXES—*taxes must be uniform in proportion to the value of property.* Under the constitution no corporate authority can compel one person to pay a greater proportion of taxes, according to the value of his property, than another, and where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity and their assessments of all persons must be at the same proportional value.

2. SAME—*valuation must be fraudulent to be impeached.* No difference in judgment as to the value of property, however gross, between the State Board of Equalization and the courts can be sufficient to impeach the valuation of the board, but to have such effect the assessment must have been fraudulently made.

3. SAME—*when assessment is fraudulent.* An over-valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made, and a willful disregard by the members of the State Board of Equalization of a known duty, for the purpose of producing a result which could not otherwise have been produced, may be urged against an assessment as a fraud.

4. SAME—*what may be testified to by members of State Board of Equalization.* In a proceeding to enjoin the collection of a tax on the ground that the assessment by the State Board of Equalization is fraudulent, the court has no power to inquire into the mode of reasoning by which the members of such board arrived at their conclusions or the motives or influences that brought about their decision, but the members of the board may testify to the circumstances under which the assessment was made, the knowledge they had, the method of procedure adopted and all facts in regard to the assessment.

5. SAME—*when a court of equity will enjoin collection of tax.* A court of equity will exercise jurisdiction to enjoin the collection of a tax where the tax is not authorized by law, where it is assessed upon property not subject to taxation, and where the property has been fraudulently assessed at too high a rate.

6. SAME—*when an assessment is at too high a rate.* An assessment of corporate property by the State Board of Equalization is at too high a rate, even though less than the actual value of the

property, when the property is assessed at a greater proportion of its actual value than is adopted by the State board at the same time in the assessment of all other property.

7. Same—*the State Board of Equalization cannot disregard its own rules.* An assessment arbitrarily made by the State Board of Equalization in disregard of its own rules for ascertaining the value of the capital stock of corporations cannot be sustained, and collection of a tax extended upon such assessment will be enjoined.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding.

MEAGHER, WHITNEY, RICKS & SULLIVAN, (BOETIUS H. SULLIVAN, and EDWIN HEDRICK, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, and MACLAY HOYNE, State's Attorney, (SAMUEL A. ETTELSON, Corporation Counsel, LOUIS J. BEHAN, JOHN W. BECKWITH, LEON HORNSTEIN, CHARLES R. FRANCIS, MORRIS SCHAEFFER, and MORTON S. CRESSY, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The State Board of Equalization assessed the capital stock of the People's Gas Light and Coke Company in 1909 at $12,314,226, upon which valuation a tax of $550,445.90 was extended. On February 28, 1910, the company filed a bill against the treasurer of Cook county to enjoin the collection of all of this tax in excess of $300,000, upon the ground that the assessment was fraudulent, excessive and not uniform with the assessment of other property throughout the State, which was at the same time so under-assessed as to impose upon the complainant a greater share of the burden of taxation in proportion to the value of its property than that imposed upon other property. A temporary injunction was granted upon the payment of $300,000 to the treasurer. An answer was filed and the cause was re-

ferred to a master, who made a report recommending a decree making the temporary injunction permanent. The court overruled most of the defendant's exceptions to the master's findings of fact and partially sustained others, but sustained exceptions to the legal conclusions and entered a decree dismissing the bill for want of equity. The complainant has appealed.

The State Board of Equalization adopted the following rules for assessing the capital stock of corporations, including the franchise over and above the tangible property:

*"First*—The fair cash value of the shares of capital stock (consideration being given, among other things, to the value of the shares of stock and the quotations of such shares in the market over such a period of time as may be reasonable, also the books of said corporations and the returns made to the Auditor of Public Accounts, or such other information as the board may have or may be able to obtain,) and the amount of the indebtedness (except indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property,) shall be combined or added together. Said State Board of Equalization shall then equalize said amount so obtained, so that said companies or associations shall be assessed as near as practicable upon a uniform basis with other property throughout the State.

*"Second*—From the aggregate amount so determined and equalized, as aforesaid, there shall be deducted the aggregate equalized valuation of all tangible property of such corporation or association, respectively, and one-third of the remainder, if any, shall be taken and held to be the assessed value of the capital stock of such corporation or association, including the franchise, over and above the tangible property thereof."

The appellant's statement made in 1909 in compliance with the statute requiring from corporations sworn statements in regard to their capital stock showed that the

amount of its capital stock was $35,000,000, consisting of 350,000 shares, all of which had been issued and paid up; that the total amount of its indebtedness was $37,096,000; that the market quotations of its stock from April, 1908, to April 1, 1909, varied from 88½, the lowest, in April 1908, to 114½, the highest, on April 1, 1909, and at the date of the statement, September 28, 1909, were about 115⅝, and that the assessed valuation of all its tangible property was $8,311,373, representing the full value of $24,934,120. Assuming the value of the stock to be $115 a share, the total valuation was $40,250,000. With the indebtedness added, the total is $77,346,000. Equalizing this on the basis of an assessment of other property throughout the State at eighty per cent of its value would produce the amount of $61,876,800, from which, according to the rule, should be deducted the equalized valuation of the tangible property, $24,934,120. The remainder is $36,942,680, one-third of which, $12,314,226, is the amount of the assessed value of the capital stock which is complained of. The assessment does not exceed the actual value of the appellant's capital stock and franchise ascertained according to the rules of the State Board of Equalization.

The appellant's case is not based upon an actual valuation of its property above its fair cash value, but upon an intentional, and therefore fraudulent, systematic undervaluation for assessment of all other property in the State, and particularly by the State Board of Equalization of the value of the capital stock and franchise above the value of the tangible property of all other corporations except the appellant. The case is substantially that appellant's property was assessed at practically its full value while all other property was so grossly under-valued as to make the appellant pay a much larger proportion of the taxes than it should. The bill charges that personal property in the State was assessed by the local assessors at not exceeding fifty per cent and real estate at not exceeding sixty per cent of

its fair cash value, and that these under-assessments were intentionally and deliberately made. It further alleges that the State Board of Equalization assessed the capital stock and franchises of 1168 companies and associations, including the appellant, incorporated under the laws of this State, other than railway companies, with an aggregate paid-up capital stock of $328,077,216, at a total full value of $261,-362,997, or at an assessed value of $87,120,999; that the equalized value of the tangible property of said companies or associations was $51,394,441 and that the net assessment of their capital stock and franchises was $35,394,441. The appellant's assessment was more than one-third of this amount. It is also alleged that the board fixed the value of the capital stock and franchises of 1336 other companies and associations at a full value of $177,692,718, or an assessed value of $59,230,906, which latter sum was precisely the same as the equalized value of the tangible property of the 1336 companies or associations as assessed by the local assessors, whereby no capital stock and franchise tax was assessed against them. The bill further charges that the board deliberately and fraudulently under-valued at not to exceed fifty-five per cent of its value, the capital stock, including franchises, of steam railways, and at not to exceed thirty per cent the capital stock, including franchises, of electric railways, in order to relieve such companies from the payment of their just proportion of the taxes for the year 1909, and facts are set out in the bill which are relied upon to show a deliberate and fraudulent intent. The bill also charges that other gas companies throughout the State were assessed at not to exceed forty-five per cent of the fair cash value of their property but were under-assessed as the result of a deliberate and fraudulent intent and purpose, which relieved them from the payment of their just proportion of the public burden, and that property throughout the State of every kind was under-valued and assessed at not to exceed sixty per cent of its fair cash value, ex-

cept in the case of appellant; that the assessment against the appellant, as compared with every other assessment of capital stock and franchise, is unfair, unjust, ununiform, discriminatory and confiscatory and was arbitrarily fixed or determined upon some other basis than that applied to all other companies; that it is a gross fraud upon the appellant and imposes upon it a greater proportion of the public burden than is borne by other similar corporations and than is borne by any other property of the same value, and amounts to the taking of the appellant's property without due process of law, imposes an unequal burden of taxation, and is therefore in contravention of the provisions of the constitution of the State requiring that taxes shall be equal and uniform throughout the State.

Rules fixed by the State Board of Equalization for ascertaining the value of the capital stock of corporations substantially the same as those now in force have been approved by this court. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 id. 591.) In *State Board of Equalization* v. *People,* 191 Ill. 528, an assessment which had been arbitrarily made too low was disregarded and a writ of *mandamus* was awarded requiring the State Board of Equalization to make an assessment of the capital stock of the corporation involved according to its rules. In *Calumet and Chicago Canal and Dock Co.* v. *Stuckart,* 275 Ill. 253, the collection of the capital stock tax based upon an assessment of capital stock in violation of the rules of the board was enjoined. The evidence shows that the assessment of the capital stock of corporations was referred by the board to two committees of seven each, one having charge of the capital stock of all corporations except railways and the other of railway corporations. The committees acted independently, and each made a report to the board of the assessments recommended and the report of each committee was adopted. The committee on

capital stock of corporations other than railways dealt with the assessment of 2504 corporations, but in no case were the rules of the board which have been quoted followed. In most cases no attention whatever was paid to them, and in the few cases in which there was some attempt at formally following the rules they were substantially disregarded. Usually the chairman of the committee consulted the member of the district in which any corporation was situated, and the member of the district fixed the valuation of the corporation without any reference to the rules of the board. No attempt was made to determine the value of the shares of stock, to ascertain the amount of indebtedness, to equalize the total and to deduct the assessed value of the tangible property. Of the 2504 corporations a capital stock assessment was made upon 1168. No assessment was made on 1336. Of these 1336 corporations which are not assessed, 846 had filed the statement in regard to their capital stock required by the statute to be filed by corporations, and these statements show the total assessed value of tangible property to be less than the value of the capital stock and franchises as determined by the State board. In each case the value of the tangible property was falsely increased above the actual assessment to an amount equal to one-third of the full value of the capital stock and franchise as determined by the board, thus evading any assessment of capital stock. The total amount of such increase in the assessed value of the tangible property was $22,191,202, evading a capital stock assessment of that amount. Thus 846 corporations, the full value of whose capital stock by their own statements exceeded their tangible property $22,191,202, were knowingly and intentionally permitted to escape assessment altogether. In the remaining 490 cases in which no assessment was made it was arbitrarily determined, without any investigation or attempt to follow the rules of the board, that no capital stock assessment should be made, and the full value of the

capital stock was fixed, without investigation, at three times the assessment of the tangible property. Of the 1168 corporations in which assessments of capital stock were made, 400 made no statement in regard to the capital stock required by the statute, and they were assessed arbitrarily amounts varying from one to ten per cent of their capital stock. If the appellant had made no return and been assessed on the same basis the amount of its assessment would have been between $350,000 and $3,500,000. Of the corporations which did file statements 355 admitted a total value of capital stock and indebtedness aggregating $139,-968,508, but the State Board of Equalization determined that the full value of the same stock and indebtedness was $86,320,387, thus evading the assessment of the difference, $53,648,121. The remainder of the 1168 corporations, besides the 400 which made no report, except some public utility corporations in Chicago, including the Commonwealth-Edison Company, the Chicago Telephone Company, the Chicago City Railway Company, the Consolidated Traction Company, and the appellant, were assessed arbitrary amounts as the value of the capital stock and franchises. In no case was any rate of equalization used. No attempt was made to find the fair cash value in accordance with the rules, and, of course, there was no attempt to find any percentage of that value. Instead of first ascertaining the fair cash value of the shares of stock and the amount of the indebtedness and determining the value of the capital stock by deducting the amount of the tangible property, in most cases the process was reversed. The amount of the capital stock assessment was first decided upon in gross. This amount was then added to the assessed value of the tangible property, and the full value of the capital stock and franchise was ascertained by multiplying the result by three. It was first determined, arbitrarily, what the assessed value of the capital stock should be, and the full value was then determined by adding the assessed value

of the tangible property and multiplying by three. In very many cases the assessment was made by simply copying the assessment of the previous year. In the case of the four corporations which have been mentioned by name the capital stock was taken at par, which was in each case much less than the true value as shown by the market quotations for the preceding year, the indebtedness was added and seventy per cent was assumed as a basis of equalization. This was divided by three and the amount of the tangible property assessment deducted. The assessed value of the capital stock was thus ascertained. In the case of the appellant the capital stock was not taken at par but at one hundred and fifteen per cent, which was higher than any quotation during the previous year. It was not equalized at seventy per cent but at eighty per cent. In no other case was the value of the stock assessed above par and in no other case was there an eighty per cent equalization. The evidence also showed a like condition as to the assessment of railways. No corporation or railway seems to have been assessed on as high a basis as the appellant and it seems no rule was followed by the board in making the assessment.

The master found that the State Board of Equalization, in assessing the fair cash value of the capital stock of corporations, did not observe its rules on that subject but arrived at its assessments by other methods; that its assessments were not uniform but were discriminatory and were prejudicial to the rights of the appellant; that the total valuation of the capital stock and franchises of all corporations represents a far less sum than would have been the case had the same rule been applied to them as to the appellant; that the valuation placed on the capital stock and franchise of the appellant represents more than its actual proportion of the entire valuation of capital stock and franchises of taxable corporations in Illinois, and as a result that the capital stock and franchise taxes against the appellant represent more than the appellant's equitable

share of such taxes, and that the failure of the State Board of Equalization to apply its rules alike to all corporations within its jurisdiction amounts to a willful disregard of its known duty, was done for the purpose of producing a result which could not otherwise be produced and amounted to a fraud upon the appellant. The court, in substance, found the same as the master.

The constitution requires that such revenue as may be needful shall be provided by the levy of a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be selected or appointed in such manner as the General Assembly shall direct and not otherwise. While this mandate is directed to the General Assembly and has respect to the laws which may be passed for the imposition of taxes, as was held in *Spencer & Gardner* v. *People,* 68 Ill. 510, yet it was held, with reference to the substantially identical provision of the constitution of 1848, that the great central and dominant idea of the constitution is uniformity of taxation, and no power exists or should exist in any corporate authority to go counter to this command of the fundamental law. Therefore one person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another, and where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity and their assessments of all persons must be at the same proportional value. (*Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229; *Chicago and Northwestern Railway Co.* v. *Boone County,* id. 240; *Darling* v. *Gunn,* 50 id. 424; *Chicago and Alton Railroad Co.* v. *Livingston County,.* 68 id. 458.) In *Sunday Lake Iron Co.* v. *Wakefield Township,* 38 Sup. Ct. Rep. 495, it is said by the Supreme Court of the United States: "The

purpose of the equal protection clause of the fourteenth amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional, systematic under-valuation by State officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property."

We have often held that no difference in judgment as to the value of property, however gross, between the State Board of Equalization and the court can be sufficient to impeach the valuation of the board but to have such effect the assessment must have been fraudulently made. We have as often held that an over-valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. (*Keokuk Bridge Co.* v. *People,* 161 Ill. 514; *First Nat. Bank of Urbana* v. *Holmes,* 246 id. 362.) In *City of Chicago* v. *Burtice,* 24 Ill. 489, it is said: "It is nothing less than a legal fraud if the commissioners fix a valuation upon property above its real value for the purpose of evading the provisions of the law which forbids them to assess property more than three per cent in any one year. * * * It must be expected that the judgments of men will differ, and if commissioners honestly estimate property too light [high] or too low the court will not disturb it, but when an assessment is made so wide of the true value, as established by witnesses, as to raise the presumption that it was over-estimated from design, and especially when the court can see the motives prompting to such design, it will not and ought not to hesitate so to find." A willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud. (*East St. Louis*

*Connecting Railway Co.* v. *People,* 119 Ill. 182.)   "We
have repeatedly held that an assessment may be impeached
on the ground that property has been fraudulently assessed
at too high a rate.   In *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602,
we say (p. 609):  'Where · * * * the valuation is so
grossly out of the way as to show that the assessor could
not have been honest in his valuation,—must reasonably
have known that it was excessive,—it is accepted as evi-
dence of a fraud upon his part against the tax-payer and
the court will interpose.'   And in *Chicago, Burlington and
Quincy Railroad Co.* v. *Cole,* 75 Ill. 591, on page 594:
'Valuations must be the result of honest judgment and
not of mere will.'   The converse of the proposition must
be true, and an assessment may be impeached where the
assessment has been fraudulently made at too low a rate."
*State Board of Equalization* v. *People, supra.*

The members of the State Board of Equalization were
called by the appellant as witnesses and testified to the
methods followed by the board and its committees and
members in making its assessments.   The appellee contends
that their testimony was the impeachment of an official rec-
ord of the board and therefore should be disregarded.   The
court has no power to inquire into the mode of reasoning
by which the members of the board arrived at their con-
clusions or the operation of their minds or the motives or
influences that brought about their decision.   The mental
processes by which an inference is drawn, a conclusion is
arrived at and a judgment reached cannot be inquired into,
but the facts which occur on a hearing, the evidence which
was introduced and the actions and words of those present,
so far as they tend to throw light on the subject of inquiry,
may be proved.   There is no reason why the members of
the board are not competent to testify to the circumstances
under which the assessment was made, the knowledge they
had, the method of procedure adopted and all facts in re-
gard to the assessment.

A court of equity will exercise jurisdiction to enjoin. the collection of a tax where the tax is not authorized by law, where it is assessed upon property not subject to taxation and where the property has been fraudulently assessed at too high a rate. This is the long established and well recognized practice in this court. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co. supra; Chicago, Burlington and Quincy Railroad Co.* v. *Cole, supra; Pacific Hotel Co.* v. *Lieb, supra; New Haven Clock Co.* v. *Kochersperger,* 175 Ill. 383; *Calumet and Chicago Canal and Dock Co.* v. *Stuckart, supra.*) The appellee does not controvert this proposition but insists that equity is without jurisdiction in this case because there was no assessment at too high a rate, the appellant's assessment being less than the fair cash value of all its property. This argument involves the assumption that an assessment can be at too high a rate only when it exceeds the full value of the property assessed. An assessment is, however, at too high a rate, even though less than the actual value, when the property is assessed at a greater proportion of its actual value than is used at the same time in the assessment of all other property. This was the holding in the cases of *Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* and *Chicago and Northwestern Railway Co.* v. *Boone County, supra.* In those cases neither the property of individuals nor of the railroad companies was assessed at its actual value but far below it, and in the latter case the court said: "The supervisors, when sitting as a board to equalize valuations, had before them the several assessments of the assessors of the different towns in the county, which upon their face showed the valuation; and it was uniform as to those tax-payers, and, in that view, wholly unobjectionable, however reprehensible and violatory of the law it may have been on the part of these assessors. That afforded no justification to the board, if they did so, to withdraw the property of the appellants from the protec-

tion of this constitutional principle of uniformity, and by the addition of twenty per cent on their rolling stock and of fifty per cent on their fixed and stationary personal property compel them to pay thereby more taxes on the valuation of their property than the individual citizen paid on his."

The State Board of Equalization has the duty of equalizing the valuation of property as listed and assessed in the different counties of the State in accordance with the provisions of the Revenue act. It is also an assessing body, whose duty it is to assess, among other things, the capital stock of certain corporations, and it has the power to adopt rules for that purpose, which it is bound to adhere to and faithfully·apply in all cases where they are applicable. An assessment arbitrarily made by the board in disregard of its own rules for ascertaining the value of the capital stock of corporations cannot be sustained. (*Calumet and Chicago Canal and Dock Co.* v. *O'Connell,* 265 Ill. 106.) The collection of a tax extended upon such assessment will be enjoined. (*Calumet and Chicago Canal and Dock Co.* v. *Stuckart, supra.*) The board of equalization which made this assessment was bound to make it according to law and the rules which it had promulgated for assessing the capital stock of corporations. It did not do so but knowingly and intentionally disregarded its rules completely, making no pretense of applying them in the great majority of cases and making its valuations in the individual cases according to its will without reference to the rules, instead of according to its judgment with reference to the rules. The appellant was knowingly and intentionally discriminated against and the result was a fraud upon it. The assessment cannot be sustained.

What relief ought the appellant to have in a court of equity? Though the assessment was invalid and though the appellant is entitled to relief against the inequality and injustice of it, it ought in equity to bear its just proportion

286 – 12

of the burden of taxation, and it tendered upon filing its bill, and has paid, $300,000 of the $550,445.90 of tax extended against it. The residue it claims should be enjoined. So far as the other corporations whose stock was or should have been assessed by the State Board of Equalization are concerned, the amount already paid by the appellant exceeds the proportionate amount which it should pay if all were assessed on the same basis.

The appellee insists that even if the appellant's assessment were shown to be higher than that of other corporations it would still not be entitled to equitable relief because it is not shown that its assessment is excessive as compared with the great bulk of other taxable property throughout the State and with the real and personal property assessed by the local assessors. As to the assessment of lands Edmund Jackson, a member of the board, testified: "We found that the lands perhaps were assessed at around anywhere from forty-five to fifty-five per cent of the fair cash value as shown by sales made in the same counties. I do not recall any instance in the real sales of lands that we examined where sales were made at to exceed fifty-five per cent of the assessment. There might have been instances of this kind but I do not recall any. I mean where the assessment was· fifty-five per cent of the sale. That is what I meant to say and thought I said it." As to personal property, a tabulated statement from the reports of the State Board of Equalization from 1873 to 1909, inclusive, was introduced in evidence without objection, showing the average valuation throughout the State in the assessments of those years of the first thirteen items of personal property mentioned in the assessor's schedule required by the Revenue act. There were also introduced as evidence of the value of horses, cattle, mules and asses, sheep, hogs, agricultural implements and machinery, farm lands and buildings, the report of the assessment by the local assessors in the Biennial Report of the Auditor of Public

Accounts for 1910, the Year Book of the United States Department of Agriculture for 1909, bulletins of the Census Bureau of the Thirteenth United States Census on Agriculture, and the Statistical Report of the Illinois State Board of Agriculture for 1909. All this evidence was introduced without objection and shows a great deficiency of the assessor's valuation below the amounts stated in the statistics and various official reports and statements mentioned. The evidence does not cover all the kinds of real and personal property to be found in the State, but, all taken together, it has a tendency to show under-valuation in the assessment of real and personal property. The testimony of Jackson indicates that the assessment of real estate did not exceed fifty-five per cent, and the evidence in regard to personal property tends to show an assessment no higher. No opposing evidence of any kind was offered. If the assessment of the appellant's corporate stock had been made on a similar basis,—that is, fifty-five per cent of the fair cash value,—the valuation of its capital stock and franchise would not have exceeded $5,868,727 and the capital stock tax would have been much less than $300,000. The appellant was entitled to a decree perpetually enjoining the collection of the tax.

The decree will be reversed and the cause remanded to the circuit court, with directions to enter a decree in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTER, dissenting:

I do not agree with what is said with reference to the admission of the testimony of the members of the State Board of Equalization. Under the reasoning of the court in *Chicago, Burlington and Quincy Railroad Co.* v. *Babcock,* 204 U. S. 585, and the cases there cited, the testimony, in my judgment, as presented was inadmissible.

Mr. JUSTICE COOKE took no part in this decision.