(No. 19367.

THE MISSISSIPPI VALLEY LIFE INSURANCE COMPANY, Appellant, *vs.* M. R. STORM, County Collector, Appellee.

*Opinion filed April 17, 1930.*

JOHN V. SEES, and GEORGE B. RHOADS, for appellant.

ROBERT I. PUGH, State's Attorney, for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Appellant filed a bill in the circuit court of Shelby county to enjoin appellee, as county treasurer and collector, from enforcing collection of a corporation tax upon the capital stock of appellant for the year 1926, alleging that it had

not had the same equal treatment and the same ratable, proportionate equality in assessment that had been granted to other tax-payers similarly situated. After a hearing by the chancellor the bill was dismissed for want of equity, and this appeal followed.

Appellant is an Illinois corporation organized as a legal reserve company under the State Insurance act. On April 1, 1926, it was known as the Kaskaskia Life Insurance Company and had its principal office at Shelbyville, Illinois, but since the tax in dispute was extended it has changed its name to the Mississippi Valley Life Insurance Company and moved its principal office to Madison, Illinois. It appears that for the tax year 1926 its capital stock was $100,000 and its surplus $49,025.91, making its unassigned funds $149,025.91. The local assessor valued its tangible property at $3275. Return showing these figures was made to the State Tax Commission, which fixed the value of the unassigned funds at $51,275 and took from this the assessed value of the tangible property, leaving $48,000 as the assessed valuation of the capital stock. On January 31, 1927, this latter figure was certified to the county clerk of Shelby county, who extended the assessment upon the tax books for Shelbyville township. The 1926 rate was 7.03, and the resulting tax was therefore $3374.40. A one per cent penalty was added in May, making the sum demanded $3408.14. In May, 1927, appellant tendered the sum of $808.45 in full satisfaction of tax due, but the tender was refused. It thereupon filed its bill.

Appellee contends at the outset that a court of chancery cannot entertain a suit to enjoin the collection of a tax under the circumstances involved in the present case. Appellant insists that chancery does have jurisdiction here, citing in support of its argument, *People's Gas Light Co.* v. *Stuckart*, 286 Ill. 164, *Central Illinois Public Service Co.* v. *Swartz*, 284 id. 108, *Calumet and Chicago Canal and Dock Co.* v. *Stuckart*, 275 id. 253, *Peoria, Decatur and*

*Evansville Railway Co.* v. *Goar,* 118 id. 134, *People* v. *Ward,* 105 id. 620, *Sanitary District* v. *Young,* 285 id. 351, *Illinois Central Railroad Co.* v. *Hodges,* 113 id. 323, and *Hanover Fire Ins. Co.* v. *Harding,* 327 id. 590. Analysis of these authorities indicates that there were involved therein assessments alleged to be invalid and unlawful either for the reason of lack of lawful authority or jurisdiction to make the assessment, or because of fraud or willful violation, in some definite respect, of the rules of the assessing body. In each of them decisive considerations were involved which are not shown in the present case.

Appellant's position is stated to be, that by some means the figures returned by it went through the tax commission's office without being equalized and without being made to stand on an equality and in equal proportion with other insurance companies; that just how this happened does not appear; that it clearly was not a deliberate fraud but was evidently an inadvertence; that the tax commission sought in 1926 to act fairly and equitably, in accordance with the rule of equality and proportionate assessment. But in law, appellant alleges, the effect is the same as if there had been deliberate fraud, and the assessment is conclusively legally fraudulent "because of its gross departure from the rule of uniformity."

Granting for the moment appellant's contention that if the record disclosed against appellant an inadvertent gross departure from an established rule, or from a ratio of equalization applied to other corporations similarly situated, equity might intervene in spite of admitted good faith upon the part of the tax commission, it must be said that no such departure appears here. Appellant introduced exhibits purporting to indicate that twenty-one legal reserve companies organized under the laws of the State of Illinois were not assessed at all by the tax commission in 1926. Appellant and four other companies were assessed. The Continental Assurance Company had unassigned funds of

$1,213,468.52, which were valued by the tax commission at $18,000, or one and one-half per cent. The tangible property of this company was assessed by the local assessor at $6000, and the final assessment on the capital made by the commission was $12,000. The Illinois Life Insurance Company had unassigned funds of $4,052,804.71, which were valued by the tax commission at $1,277,500, or thirty-one and one-half per cent. The tangible property of this company was $1,265,000, and the final capital assessment by the commission was $12,500. The Rockford Life Insurance Company had unassigned funds of $311,257.99, which the tax commission valued at $54,600, or seventeen and one-half per cent. The tangible property of this company assessed by the local assessor was $45,600, and the final assessment by the commission was $9000. The Washington Fidelity Company had unassigned funds of $652,-110.08, which the tax commission valued at $11,700, or one and four-fifths per cent. The tangible property of this company was $5400. The commission extended a final assessment against the capital of $6200. Appellant's unassigned funds for that year were valued, as above stated, at $51,275, or thirty-four and one-half per cent, and final assessment was fixed at $48,000.

So far as the record of this case goes, if any conclusion can be drawn from the action of the tax commission in not extending any capital assessment at all against twenty-one companies and in arriving at widely divergent proportionate valuations of the unassigned funds of the five that were assessed, it is that no uniform rule of assessment was followed. No definite standard is shown by which any departure to appellant's prejudice can be measured. The only rule of the tax commission introduced in evidence was rule 11, in force during 1925 and 1926, and there is no showing that this rule was not followed by the commission in dealing with appellant. There is no showing that in dealing with appellant the commission did not comply with

the provisions of section 13 of the Revenue act. (Cahill's Stat. 1929, chap. 120, par. 13.)

Appellant calls attention to compared tables from the records of the State insurance department and tax commission for 1925, which were introduced in evidence by appellant, and which showed that for that year there were twenty-six legal reserve life insurance companies organized under the laws of Illinois, of which only three were assessed. One of these three was the International Life, with unassigned funds of $420,678.60, which were valued by the tax commission at $31,025. Its tangible property was assessed at $11,025, and the commission fixed the assessment upon its capital at $20,000. Another was the Rockford Life, with unassigned funds of $343,154.38, which were valued by the tax commission at $54,600. Its tangible property was assessed at $45,600, and the commission fixed the assessed value of its capital stock at $9000. Appellant was the other company assessed that year, and its unassigned funds were $177,667.63, valued by the tax commission at $15,000. Its tangible property was assessed at $4000, and the commission fixed its capital value at $11,000. In 1926 the International Life was among those companies not taxed at all. For 1926 the Rockford Life had unassigned funds of $311,257.99, and its tangible property was $45,600, the same as for 1925. For 1926 the tax commission valued the unassigned funds of the Rockford Life at $54,600, precisely the same as in 1925, making the capital assessment $9000, as in 1925. It is impossible to glean from the result of taxing one company on $20,000 one year and not taxing it at all the next, taken together with arriving at precisely the same valuation on $343,154.38 in the unassigned funds of another company one year and $311,257.99 the next year, any "uniformity" of rule, procedure or method of valuation whatever. Nor is departure from such alleged rule established in this connection by proof that in 1926 appellant was assessed far more than

in 1925. In the absence of record explanation this is no more significant than what was done in 1926 with the International Life and the Rockford Life companies.

In its argument appellant calls attention to the valuation of $18,000 placed upon the $1,213,468.52 unassigned funds of the Continental Assurance Company for 1926, and points out that that company, with nearly ten times the unassigned funds of appellant, was given a valuation of only about one-third as much as appellant, concluding that if such valuation of the Continental Assurance Company was correct that company was hopelessly insolvent,—a condition which the State insurance department would not permit to exist,— and that this is an apt instance of the commission's departure from "the rule of uniformity" in assessing appellant. In the absence of showing of any violation of rule or statute in appellant's case, if any reasonable and applicable conclusion follows from such treatment accorded to the Continental Assurance Company, it is that the commission erred in assessing it at too low a figure. But this does not establish that the valuation given appellant was too high or violated any law or rule. As the court said in *Keokuk Bridge Co.* v. *People,* 161 Ill. 514: "The assessment of the property of others at less than its fair cash value, while it may cause the tax-payer whose property is assessed at its fair cash value to bear an undue proportion of the public burden, will not, in the absence of fraud, affect the validity of the tax." Appellant specifically states that it claims no fraud.

In the recent case of *Hettler Lumber Co.* v. *Cook County,* 336 Ill. 645, this court held that under section 1 of article 9 of the constitution the courts, in the absence of fraud, have no power to review or determine the valuation of property fixed by the proper officers for purposes of taxation, and that for an excessive or unequal assessment, where the complaint is not fraud but an error of judgment, merely, the sole remedy is an application for an abatement to such statutory agencies as have been provided for hear-

ing it. In *People* v. *Hart,* 332 Ill. 467, it was held that where a bill in a court of equity to enjoin the collection of a tax alleges over-valuation of the complainant's property by the fraudulent act of the assessor the complainant must prove such over-valuation, and also that it was made by the assessor from some corrupt or illegal motive, or that the assessment is so grossly excessive as to amount to constructive fraud; and such proof must be clear and convincing. But before a court of equity will interfere to relieve against an excessive assessment fraudulently made, the taxpayer must show that he has been diligent in pursuing a remedy before the board of review to have such assessment corrected or that he was prevented from having the benefit of such legal remedy by fraud, accident or mistake, and even in such case a court of equity cannot make a just and equitable assessment and determine the amount of taxes ultimately to be paid. The principle thus laid down is applicable to the present case. Provisions whereby those aggrieved by the action of the tax commission in making assessments may seek review thereof are made by statute. (Cahill's Stat. 1929, chap. 120, pars. 114, 115.) In the absence of any claim of fraud, and in view of appellant's position that the wrongful assessment here was only an inadvertence, it would seem not only that these provisions would have provided ample relief, but that appellant would have found therein means peculiarly adapted to remedying the "mistake" or "clerical error" alleged to have been made in its assessment.

Appellant does not make clear upon just what theory it computed its tender of $808.45. Even assuming that upon tender made of a valid portion of a tax, equity could, under the circumstances of the present case, properly enjoin a remainder definitely shown to be improper, appellant would not be in position to invoke such remedy, because the record furnishes no satisfactory basis upon which the alleged invalid portion of the tax could be separated from the

rest. While, as stated in *Hanover Fire Ins. Co.* v. *Harding, supra,* this court may in some cases have the power, and it is its duty, to determine what portion of a tax is lawful where the record makes such action possible, under a record such as this it would be impossible to make such determination.

The chancellor did not err in dismissing appellant's bill for want of equity, and the decree of the circuit court of Shelby county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*