# FARGO *v.* HART.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 154.   Argued February 24, 25, 1904.—Decided March 21, 1904.

While a State can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce between the States, it cannot tax the privilege of carrying on such commerce, nor can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere.

A state assessment upon an express company of another State proportioned to mileage is bad when it appears that the total valuation is made up principally from real and personal property, not necessarily used in the actual business of the company, and which is permanently located in the State where the company is incorporated.

The transmission of such an assessment by a state board to the auditors of the several counties may be enjoined.

Where the assessment is void as made, and a question is raised in the bill whether any assessment can be levied, an offer to give security to the satisfaction of the court for the payment of any sum ultimately found due is sufficient without a tender of any sum.

THE facts are stated in the opinion of the court.

*Mr. Lewis Cass Ledyard* for appellant:

The constitutionality of the state law has been sustained but this suit involves whether in the practical administration of the law the taxing authorities are not depriving express companies of rights secured by the Constitution. The system of taxation is that which has become known as the "unit system." Adopted by the States, and sustained by this court as a method of taxing railroad property (*Maine* v. *Grand Trunk Railway*, 142 U. S. 217; *Pittsburgh &c. Railway* v. *Backus*, 154 U. S. 421), and sleeping car companies (*Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18) it has been extended to the property of telegraph companies (*Western Union Tel. Co.* v. *Taggart*, 163 U. S. 1), and by the decisions above referred to was sustained in its application to express companies. Its principal features are the valuation of the entire property of the company, wherever located, as a unit profit-producing plant, the aggregate market value of all the stock and bonds of the company being taken to establish the value of its entire property, and it was held that a fair proportion of this value, so ascertained, might be imputed to the property of the company within the taxing State, and that such fair proportion might be determined upon a mileage basis, thus imputing to the property within the State a proportion of the value of the total property equal to the proportion between the number of miles operated in such State and the total number of miles everywhere operated by the company which has a fixed and permanent situs.

The business in which they are engaged is in its nature not the operation of a plant, but the rendering of services. They

have no means of transportation of their own, but employ the facilities of railroad companies and other carriers for the forwarding of goods. The only property which they have in actual use in the business itself consists of horses, wagons, safes and office furniture, and these instrumentalities have, in fact, a definite and ascertainable value, as property, which is the same as that which may be attributed to similar horses, wagons, safes and office furniture owned by other people, and it was therefore claimed that to impute to them an enormously enhanced value based upon the value at which the business of the company and all its assets could be sold, as evidenced by the market value of its securities, would be, in substance and in fact, to import into the taxing State values not within its jurisdiction, and that an assessment upon property within the State at such enormously enhanced values would be, in substance and in fact, a taxation of property situated without the State.

No State can tax tangible property owned by a non-resident, and having an actual situs without the State. Such taxation is a taking of property without due process of law. *Louisville, etc., Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Adams Exp. Co.* v. *Ohio,* 165 U. S. 194; *Adams Exp. Co.* v. *Kentucky,* 166 U. S. 171; *Adams Exp. Co.* v. *Ohio,* 166 U. S. 185; *Pittsburgh, etc., Ry. Co.* v. *Backus,* 154 U. S. 421; *Cleveland, etc., Ry. Co.* v. *Backus,* 154 U. S. 439. It matters not whether legislative authority exists for the illegal act, or whether it is done in pretended pursuance of such authority, or whether it is confessedly a barefaced exercise of arbitrary power. It is the thing itself which may not be done. *Reagan* v. *Farmer's L. & T. Co.,* 154 U. S. 362, 390; *Cummings* v. *National Bank,* 101 U. S. 153; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

The court below erred in holding that no fraud was proved on the part of the State Board, and that its determination, either as to the value of the company's property or the company's right to include its ocean mileage, could not be impeached except for fraud. *Hart* v. *Smith,* 159 Indiana, 182,

and cases cited on p. 196; *State* v. *London &c. Co.,* 80 Minnesota, 277, 284.

As to the bonds, stocks, securities, to say nothing of real estate and chattels, they are tangible property, capable of having an actual situs where they exist. *New Orleans* v. *Stempel,* 175 U. S. 309; *Blackstone* v. *Miller,* 188 U. S. 189.

As to jurisdiction, in a suit of this nature, one may sue for all and the citizenship of the parties to the record alone will be considered. *Stewart* v. *Dunham,* 115 U. S. 61; *Hotel Co.* v. *Wade,* 97 U. S. 13; *Payne* v. *Hook,* 7 Wall. 425; *Society of Shakers* v. *Watson,* 68 Fed. Rep. 736; *Smith* v. *Swormstedt,* 16 How. 302; *President & Trustees of Bowdoin College* v. *Merritt,* 54 Fed. Rep. 62. But diversity of citizenship is not the only ground of jurisdiction. Federal questions are involved, and the complainant had a right to resort to the Federal Courts upon that ground alone.

*Mr. Cassius C. Hadley,* with whom *Mr. Charles W. Miller,* Attorney General of the State of Indiana, *Mr. L. G. Rothschild* and *Mr. William C. Geake* were on the brief, for defendant in error:.

There is no authority for a court of equity to enjoin any clerical officer from extending assessments for taxation upon the duplicates. There is no authority in the rules of equity whatever for enjoining either the auditor of State or the auditor of a county from performing what the law enjoins upon him. The auditor of State simply certifies down the assessments made by the state board of tax commissioners to the auditors of the counties, and the auditor of the county places such assessment upon the tax duplicates that are to be placed in the hands of the collecting officers. *Smith* v. *Smith,* 159 Indiana, 388, and cases cited on p. 389.

To enjoin the collection of a tax it is necessary for the complainant to pay, or make an unconditional tender of such part of the taxes as is undisputed, or what can be seen to be due from the face of the bill, or shown to be due by affidavits. *State Rail-*

road Tax Cases, 92 U. S. 575, 616; National Bank v. Kimball, 103. U. S. 732; Stanley v. Supervisors of Albany, 121 U. S. 535, 552; Albuquerque Bank v. Perea, 147 U. S. 87, 90; Northern Pac. R. Co. v. Clark, 153 U. S. 252, 272; City Council v. Sayre, 65 Alabama, 564, 566; County of Los Angeles v. Ballerino, 99 California, 593; Bundy v. Summerland, 142 Indiana, 92; Morrison v. Jacoby, 114 Indiana, 84, 93; Studabaker v. Studabaker, 152 Indiana, 89, 97; Lewis v. Boguechitto, 76 Mississippi, 356; Palmer v. Township, 16 Michigan, 176, 178; County Commrs. v. Union Mining Co., 61 Maryland, 545, 556; Ottawa Glass Co. v. McCaleb, 81 Illinois, 556; Northern Pac. R. Co. v. Patterson, 10 Montana, 90, 103; Welch v. City of Astoria, 26 Oregon, 89; Union Pac. R. Co. v. Ryan, 2 Wyoming, 408; Huntington v. Palmer, 8 Fed. Rep. 449; People's Nat. Bank v. Marye, 191 U. S. 272; Copper Co. v. Scherr, 50 W. Va. 533, 540; Covington v. Town of Rockingham, 93 N. Car. 134, 140; High on Injunctions (3d ed.), § 497; 2 Beach on Injunctions, § 1208; 1 Spelling Inj. and Extra. Rem. (2d ed.) § 662; 2 Cooley on Taxation (3d ed.), 1424–1426; State ex rel. v. West. Union Tel. Co., 165 Missouri, 502, 517; Western Union Tel. Co. v. Gottlieb, 190 U. S. 412, 426.

It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must pay what is conceded to be due or what can be seen would be due on the face of the bill or be shown by affidavits whether conceded or not, before the preliminary injunction should be granted. Cases cited supra and see also Hagaman v. Commissioners, 19 Kansas, 394; Chicago &c. R. R. Co. v. Board, 67 Fed. Rep. 413.

The state board of tax commissioners, having fixed the valuation and assessed the property, their action in this behalf is final, and cannot be avoided or set aside, except for fraud on the part of the state board of tax commissioners, which would render the assessment void. State v. Adams Exp. Co., 144 Indiana, 549.

This plan of taxation is fair and just. If such a plan were

followed in all the taxing jurisdictions in which appellant has lines and routes, appellant would not be subject to excessive or double taxation.

Under these provisions of the statute the state board is given jurisdiction over the subject matter, to value and assess the mileage of the express companies having lines and routes within the State and acting thereunder they made such assessment and rendered their finding, which, in its nature, is that of a judgment, and is final. This is especially true as against a collateral attack. *Cleveland, Cin. &c. Ry. Co.* v. *Backus,* 133 Indiana, 513, and cases cited on p. 541; *P. C. I. & St. L. Ry. Co.* v. *Backus,* 133 Indiana, 625, 652; *S. C.,* 154 U. S. 421, 434; *Youngstown Bridge Co.* v. *Kentucky &c. Bridge Co.,* 64 Fed. Rep. 441, and cases cited; *McLeod* v. *Receveur,* 71 Fed. Rep. 455, 458; *Stanley* v. *Supervisors,* 121 U. S. 535, 550; *Adams Exp. Co.* v. *Ohio,* 165 U. S. 194, 229; *Marsh* v. *Arizona,* 164 U. S. 599, 610; *Van Nort's Appeal,* 121 Pa. St. 118, 129.

The evidence wholly fails to sustain the contention of appellant respecting the ownership, situs and use of the stocks and bonds owned by appellant.

As to burden of proof in regard to stocks and bonds not being used in business being on the company, see *Adams Exp. Case,* 166 U. S. 185, 222; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 18, and cases cited pp. 22, 23; *Marye* v. *B. & O. R. R.,* 127 U. S. 117; *West. Un. Tel. Co.* v. *Taggart,* 141 Indiana, 281, 300; *S. C.,* 163 U. S. 1, 29.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the United States District Court dismissing the plaintiff's bill and supplemental bills. The bill was brought by the president of the American Express Company, a joint stock company of New York, on behalf of himself and the other members of the company, to enjoin the auditor of the State of Indiana from certifying an assessment for 1898 to the auditors of the several counties of the State.

Supplemental bills sought the like remedy in respect of the assessments for the following years through 1901. The ground of relief is that the assessments will result in unconstitutional interferences with commerce among the States and also are contrary to the Fourteenth Amendment. The plaintiff's case may be stated in a few words. The American Express Company is engaged in commerce among the States, including Indiana. It has real estate of a market value of nearly two million dollars, which is outside of Indiana and which it says is not used in its business, and fifteen million and a half dollars' worth of personal property in New York as to which it says the same; over three million dollars' worth of real estate used in connection with the business and about a million and a half dollars' worth of personal property used in the business, of which there was less than eight thousand dollars' worth in Indiana. It has paid the local taxes on this last. The total value of the property for 1898 was $22,059,055.35. The market value of what for brevity we may call its stock was $21,600,000. The state board of tax commissioners has undertaken to tax the property of the company under the law which was upheld in *American Express Co.* v. *Indiana,* 165 U. S. 255; *Adams Express Company* v. *Ohio State Auditor,* 165 U. S. 194; *S. C.,* 166 U. S. 185; *Adams Express Company* v. *Kentucky,* 166 U. S. 171, by treating the whole business as a unit and assessing the company on a proportion of the total value of its property determined by the ratio of the mileage in Indiana to the total mileage of the company, excluding its ocean mileage for foreign express business, which the company says should have been included. The company relies on the fact that it made a return to the board setting forth in detail what its property was, where it was situated and how used, and that the value and nature of the property was not disputed; and it contends that when these facts appeared the board was not at liberty to spread the whole value over the whole line equally and tax by mileage. The auditor in his answer sets up that the said sum of fifteen and a half million dollars in securities is used by

the company as a part of the necessary capital of its business and denies that the board assesses personal property not used in connection with its business. Thus he admits by implication that the above sum did enter into the assessment made, and this would be obvious unless we should assume the intended tax to be wholly arbitrary, as the assessment was at the rate of four hundred and fifty dollars a mile for seventeen hundred and ninety-eight and a fraction miles, amounting to $809,253, as against less than eight thousand dollars' worth of tangible property in the State. There are some differences of detail between the State and the company as to the precise value of the stock, etc. But the foregoing facts present the general question.

The contention of the company in its extreme form is that the State had no right to tax it anything for the years when its stock was of less market value than its property, because that ratio showed that the whole value of the company was in its tangible assets, and that the intangible property spoken of in the *Adams Express Company* case was nothing. It says that in any year that property was so small as to warrant only a nominal tax. We lay this contention on one side. It was admitted at the hearing before the board of tax commissioners that an appreciable sum properly might be assessed on the mileage basis, and therefore the board was warranted in assuming the fact. It was admitted at the argument before this court that the low market value of the stock was due in part to the ignorance of the public as to the assets of the company. On this concession the market value of the stock was not a test of the value of the business. The statement is confirmed by the continued rise in the stock since, up to $225 in April, 1902. And apart from these admissions the board well might have hesitated to believe that the company was carrying on a business, which it gave no signs of intending to stop, at a loss, and was paying its regular dividends out of investments alone. We lay on one side also the question of ocean mileage. Without dwelling on the sudden change in the returns which added

nearly one hundred and thirty thousand miles in 1898, with comparatively slight explanation, of the admitted differences between the ocean and land carriage, we cannot say that the tribunal having the duty and sole jurisdiction to find the facts exceeded its powers in not allowing the item.

We come, then, to the real question of the case: whether, the tax provided for by the statute being a tax on property, it sufficiently appears that the board took into account property, which it had no right to take into account in fixing the assessment at the large sum which we have mentioned. We already have stated reasons for assuming that the personal property in New York did enter into the valuation. We may add that it appears by a stipulation as to facts, that "the minutes of said state board of tax commissioners" are in evidence. This means the complete minutes. It must be assumed that the minutes show all that took place in the proceedings, and therefore that we have before us all the evidence that was put in as well as a report of what was said. There was no indication of dispute concerning the amount, value and place of the company's personal property. The protests of the company alleged that there was no dispute as to the facts. If the company had been mistaken common fairness required that it should be informed and allowed to give further evidence of the undoubted truth. The ground taken before the board, and insisted on in argument before us, was that the property ought to enter into the valuation, because wherever situated it was used in the business; if not otherwise, at least as giving the credit necessary for carrying the business on. We shall assume that the question before us is narrowed to whether that ground can be maintained. The pleadings and proceedings leave no alternative open, and no other could be pressed consistently with the candor to be expected from the officers of a State, in face of a constitutional question and dealing with great affairs. For present purposes it does not matter whether the sum taken for division on a mileage proportion was reached by taking the value of the stock or the value of the tangible,

assets of the company. For if the former was the starting point it appears from what we have said that the tangible assets gave the stock its value. The use of the value either of total stock or total assets is only as a means of getting at the true cash value of property within the State. *Western Union Telegraph Co.* v. *Taggart,* 163 U. S. 1, 26, 27; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 25.

The general principles to be applied are settled. A State cannot tax the privilege of carrying on commerce among the States. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the States. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the State in taxing, even though the other parts of the system are outside of the State. The sleepers and rails of a railroad, or the posts and wires of a telegraph company, are worth more than the prepared wood and the bars of steel or coils of wire, from their organic connection with other rails or wires and the rest of the apparatus of a working whole. This being clear, it is held reasonable and constitutional to get at the worth of such a line in the absence of anything more special, by a mileage proportion. The tax is a tax on property, not on the privilege of doing the business, but it is intended to reach the intangible value due to what we have called the organic relation of the property in the State to the whole system. *Western Union Telegraph Company* v. *Taggart,* 163 U. S. 1, 21, 22. And this principle, established by many cases, has been extended by the cases first cited above to the lines of express companies, although those lines are not material lines upon the face of the earth. There is the same organic connection as in the other cases.

It is obvious however that this notion of organic unity may be made a means of unlawfully taxing the privilege, or prop-

erty outside the State, under the name of enhanced value or good will, if it is not closely confined to its true meaning. So long as it fairly may be assumed that the different parts of a line are about equal in value a division by mileage is justifiable. But it is recognized in the cases that if for instance a railroad company had terminals in one State equal in value to all the rest of the line through another, the latter State could not make use of the unity of the road to equalize the value of every mile. That would be taxing property outside of the State under a pretense. *Pittsburg, Cincinnati, Chicago & St. Louis Ry.* v. *Backus,* 154 U. S. 421, 431; *Western Union Telegraph Co.* v. *Taggart,* 163 U. S. 1, 23. The same principle applies to personal property which the State would not have the right to tax directly. *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 227; *S. C.,* 166 U. S. 185, 222, 223. In *Pittsburg, Cincinnati, Chicago & St. Louis Ry.* v. *Backus* there was reason to suspect an infraction of constitutional rights, but the Secretary of State testified that there was no assessment of property outside the State, 154 U. S. 434, and therefore the court could not say that there was more than a possible overvaluation by the board. Of course if the board did not go beyond its jurisdiction its decision was final. But the court recognized that if the facts charged had appeared the case would have been different. In the *Express Companies'* cases previously decided, it was pointed out that there was nothing to show that the line might not fairly be assumed to be of substantially the same value throughout. But it was intimated on the pages just cited that if the companies should prove the fact to be otherwise a different rule would apply, and the statutes were construed not to prevent such a difference from being taken into account.

We come back to the question whether the taking of personal property outside the State into the assessment can be justified on the ground that it gives credit necessary for the business in the State. The testimony was that the property was not necessary for that purpose, and in fact was not used. We may

assume that the board was of a different opinion, so far as that was concerned, and still we may hold its action unjustified. It will be seen that we are dealing with much more attenuated relations than when there is a physical line of rails or wires to be valued, every mile of which is a necessary condition of the use of the rest of the lines beyond, and therefore a reflex condition of the value of the line behind it. The case is stronger even than one of terminals having a large value as real estate independent of their use to the road. The express business added nothing to the value of the bonds in New York. Conversely, the utmost extent to which those bonds entered into the value of property in Indiana was in so far as they helped to make the public believe that the express company could be trusted and therefore increased its good will. That they made a part of the public more willing to buy interests in the company because they were an assurance against personal liability was no concern of Indiana. But it is obvious that merely from the point of view that the express company could be trusted by the public with the carriage of goods or money the good will could not be measured by the assets. In the first place the public knew nothing of the amount. This appears as to even the more instructed portion of the public which bought interests in the concern, and *a fortiori* as to the general run of shippers. For if even the buyers of the stock of the company would pay only in the neighborhood of the value of the tangible assets it is apparent either that they did not know what the assets were, as was stated by the appellant's counsel, or else that the good will taxed was worth nothing, and either view is equally fatal to the grounds for the tax.

But again, suppose that the state of the assets of the company had been published in every newspaper in Indiana, can it be imagined that it would have had an appreciable effect upon the company's business? Certainly it is absurd to say that the business of such companies will bear an exact or any proportion to the stocks and bonds which they may own. Unless we are much mistaken, most people who want to send

things by express employ a company simply because it is there, and they see its sign is out. The only effect that knowledge of the capital of the company could have would be to produce the conviction that the company was safe to employ. · Assume that something is to be added to the good will of a company because it is safe, and that the good will, or a part of it, of the express business in Indiana may be considered in assessing its property there, this is very different from measuring the good will by the capital, when the facts appear as they do in this case. The difference is not a mere difference in valuation, it is a difference in principle, and in our opinion the principle adopted by the board was wrong. It involved an attempt to tax property beyond the jurisdiction of the State, and to throw an unconstitutional burden on commerce among the States. The result has been that, taking the value of the stock as stated by the defendant to have been 125 for 1898, the State of Indiana assessed the company for nearly twice the total good will of its business, measuring that good will by the difference between the tangible assets and the total value of the stock. The injustice grew less flagrant as the stock rose, but in the year 1901 the assessment still was nearly double what the State had a right to assess, assuming that, without transcending its constitutional power, it had a right to assess its proportion by mileage of the total good will.

We have explained why in our opinion this cannot fairly be treated as a mere case of overvaluation, but is an assessment made upon unconstitutional principles. Under such circumstances it was impossible for the company to tender any sum, because it was impossible for it to say what, if anything, it ought to pay. It denied that under the Constitution it ought to pay anything, and it is plain that for the year 1898 at least it properly could have been assessed but a comparatively trifling sum. The contention of the company was serious and plausible. It made the only offer it could, which was to give security for the payment of whatever amount should be adjudged to be due. "If there was no right to assess the particular thing at

all, . . . an assessment under such circumstances would be void, and, of course, no payment or tender of any amount would be necessary before seeking an injunction." *People's National Bank* v. *Marye,* 191 U. S. 272, 281. See also *Santa Clara County* v. *Southern Pacific Railroad,* 118 U. S. 394; *California* v. *Central Pacific Railroad,* 127 U. S. 1; *Central Pacific Railroad* v. *California,* 162 U. S. 91, 112.

The assessment being bad, for the reasons which we have stated, the board of tax commissioners acted without jurisdiction, according to the decision of the Supreme Court of Indiana. *Hart* v. *Smith,* 159 Indiana, 182. We do not abate at all from the strictness of the rule that in general an injunction will not be granted against the collection of taxes. *State Railroad Tax Cases,* 92 U. S. 575. But it was recognized in the passage just quoted from *The People's National Bank* v. *Marye,* that under the present circumstances a resort to equity may be proper. The course adopted is the same that was taken without criticism from the court in *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194. It avoids the necessity of suits against the officers of each of the counties of the State, and we are of opinion that the bill may be maintained. *Union Pacific Ry.* v. *Cheyenne,* 113 U. S. 516; *Pittsburg, Cincinnati, Chicago & St. Louis Ry.* v. *Board of Public Works,* 172 U. S. 32.

*Decree reversed.*

The CHIEF JUSTICE, MR. JUSTICE BREWER and MR. JUSTICE DAY, dissented.