**NORFOLK AND WESTERN RAILWAY COMPANY, a Corporation, and Wabash Railroad Company, a Corporation, Appellants,**

v.

**MISSOURI STATE TAX COMMISSION, Hunter Phillips, Howard L. Love, J. Ralph Hutchison, Members of the Missouri State Tax Commission, and J. R. Towson, Secretary of the Missouri State Tax Commission, Respondents.**

No. 51943.

Supreme Court of Missouri,
Division No. 1.

Dec. 30, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Feb. 13, 1967.

Motion for Stay of Mandate Filed and Sustained Feb. 21, 1968.

Probable Jurisdiction Noted Oct. 9, 1967.

See 88 S.Ct. 84.

On Remand May 7, 1968.

Charles L. Bacon, David R. Hardy, Frederick Beihl, Kansas City, John F. McCartney, St. Louis, for appellants. Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

Norman H. Anderson, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for respondents.

HIGGINS, Commissioner.

Proceeding under Section 536.100 et seq., V.A.M.S., for judicial review of a final decision of the State Tax Commission of Missouri. The circuit court affirmed the decision, and the railroad's appeal involves construction of the revenue laws of the state.

Appellants Wabash and Norfolk and Western entered into a lease effective October 16, 1964, whereby N & W leased all of the rolling stock and roadbed owned by Wabash in Missouri and elsewhere. As part of the payment due under the lease, N & W is to pay all taxes on the demised property. Also effective October 16, 1964, were a merger of the New York, Chicago and St. Louis Railroad Company (Nickel Plate) with N & W and a lease of the rolling stock and roadbed of the Pittsburgh and West Virginia Railway Company by N & W. Prior to the leases and merger Nickel Plate, P & WV, and N & W did not run into Missouri.

Appellants furnished statements required of all affected railroads by Section 151.020, V.A.M.S., "setting out in detail the total length of their road so far as completed, including branch or leased roads, the entire length in this state, and the length of double or sidetracks, with depots, water tanks and turntables, the length of such road, double or sidetracks in each county, [etc.,] * * *; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property owned, used or leased by them on the first day of January in each year,

and the actual cash value thereof." On June 2, 1965, N & W was notified that its assessment for 1965 taxes on such properties was $31,298,939. The notice advised also that a hearing relative to the assessment would be held June 15, 1965, and "please be prepared to submit detailed information on leased equipment including copies of such leases and any other pertinent data." The hearing was recessed until June 23, 1965, at which time appellants offered evidence on various matters including the depreciated value of property in the name of Wabash alone, studies concerning rolling stock actually in Missouri, the nature of appellants' business including coal hauling in the eastern United States, and figures relating to locomotives and coal hoppers employed in the coal-hauling portion of appellants' business. Appellants' corporate status and the commission's mode of computation were stipulated.

The commission entered its Findings of Fact, Conclusions of Law and Decision:

## "FINDINGS OF FACT

"The Petitioner, Norfolk and Western Railway Company, is incorporated under the laws of the Commonwealth of Virginia with its principal office and place of business in Roanoke, Virginia; The Wabash Railroad Company is incorporated under the laws of Ohio with its principal offices and places of business in Wilmington, Delaware and Philadelphia, Pennsylvania. Norfolk and Western Railway Company owns no track or roadbed within Missouri but leases all of the track, roadbed, rolling stock and all other property owned by the Wabash Railroad Company in this State, pursuant to a lease dated March 1, 1961, as amended October 1, 1964, effective as of October 16, 1964. Petitioner owns and leases an extensive railway system which it operates in States other than the State of Missouri.

"Pursuant to the information submitted by Petitioner to the Commission on Form 1, on May 15, 1965, the State Tax Com-

mission of Missouri, on June 2, 1955, placed a total assessed valuation of $31,298,939 on Petitioner's property in Missouri for taxes for the year 1965.

"Said Assessment included an assessed value for roadbed in the amount of $11,677,875; for buildings in the amount of $499,722; and for rolling stock in the amount of $19,981,757, less $860,415, which is deducted by the Commission as an economic factor, which factor is allowed all railroads in varying amounts.

"To arrive at assessed value of rolling stock taxable in the State of Missouri, the Commission determined the assessed value of the entire rolling stock of the Petitioner, wherever situated, for the year 1965, to be in the amount of $513,309,877. This was arrived at as in all other railroad assessments made by the State Tax Commission of Missouri, by taking the original cost of the equipment by the year of acquisition and allowing five percent depreciation per year but with a maximum depreciation of Seventy-five percent of original cost. Thereafter, in this case, as in the case of all railroad assessments for the year 1965, a factor of forty-seven percent was applied by the State Tax Commission resulting, in this case in the figure of $241,255,-643. The track formula was then determined and it was found that 8.2824 percent of all of the main and branch line tracks owned or leased everywhere by Petitioner, were leased, owned, or controlled by Norfolk and Western in Missouri. This percentage of the above value of the depreciated rolling stock was determined to be $19,981,757 and was by the Commission stated to be the value of the rolling stock properly taxable in Missouri. The figures used in this determination were furnished the Commission by Petitioner in Form 1, which was filed with the Commission.

"That from the total value of the fixed property, which includes the roadbed and buildings, assessed in Missouri at $12,177,-597 which property was owned by the Wabash Railroad Coampany and leased to Nor-folk and Western, plus the above assessed value of the rolling stock and all other property, the sum of $860,415 was deducted by the Commission as an economic factor, which factor is allowed all railroads in varying amounts, and that as a result of the above method of assessment and computation, a total assessed valuation was made of $31,298,939.

"No assessment has been made against Wabash Railroad Company for the property leased to Petitioner.

"The Petitioner, on June 15, 1965, filed a request for adjustment and equalization of assessment and for a hearing with respect thereto, and such hearing was granted and such rehearing heard on June 23, 1965, at the Offices of The State Tax Commission of Missouri, 501 Jefferson Building, City of Jefferson, Cole County, Missouri, and the Commission then considered the assessment placed on said property by it as of January 1, 1965. The Railway and Commission agreed that the hearing held on June 23 constituted an exhaustion of administrative remedies of the Petitioner.

"At said hearing, the Petitioner introduced evidence consisting of testimony supplemented by exhibits for the purpose of showing assessed valuation placed by the Commission on the rolling stock of Petitioner was excessive and resulted in an unjustified discrimination against Petitioner in violation of the Constitutions, both of the United States and of the State of Missouri. The Petitioner did not challenge the amount of the assessment on its fixed properties.

"The State Tax Commission of Missouri has adopted uniform procedures and methods to determine the true value in money of the railroad property for assessment purposes within the State of Missouri. Such procedures and methods are designed to value all railroad property within the State of Missouri uniformly and equally with all other property within the State of Missouri. Such procedure and methods were used in assessing and valuing the pe-

titioner's property as of January 1, 1965. The evidence failed to disclose that the property of the Petitioner was ever placed on sale in the open market.

"Utility company valuations are made by the State Tax Commission as to the distributable property and rolling stock of railroads while other properties are assessed locally by county and township assessors. The relative values of sales ratio assessments and utility assessments are separate and distinct in that there are two methods used in arriving at values, and there is no basis for comparison between the valuation of the sale of a farm or a home based on revenue stamps attached to the deed and the valuation of utility property which is not being sold frequently, or ever. There is no similarity in these two types of property or in the method of arriving at the valuations for assessing purposes thereof.

## "CONCLUSIONS OF LAW

"All railroads now constructed, in the course of construction, or which shall hereafter be constructed in this State and all property, tangible personal property, and intangible personal property owned, hired or leased by any railroad company or corporation in this State shall be subject to taxation, and taxes assessed on real property, and tangible personal property shall be assessed in the manner set forth in Chapter 151, R.S.Mo.

"Property shall be assessed for tax purposes at its true value in money or such percentage of its true value in money as may be fixed by law. There is no such thing as an absolute true value of property. The values mentioned in the Statutes are the valuations of officials whose duty it is to make them. Property, including railroad property, is not a commodity which has a fixed market value at a given period. The value is determined always by the estimate of the party who values it; all presumptions will favor the correctness of the valuations of the officials whose duty it is to make them; and their good faith and the validity

of their acts is presumed. The State Tax Commission of Missouri is the sole judge of the credibility of witnesses appearing before it.

"Every owner, lessor or party having an interest in property shall have the right to appeal and to a rehearing under rules prescribed by the State Tax Commission. The said Commission shall investigate all such appeals or motions for rehearing or protests of assessments and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious.

"In assessing, adjusting and equalizing a railroad property for any year or years, the State Tax Commission may arrive at its finding, conclusion and judgment, upon its knowledge, or such information as may be before it, and shall not be governed in its findings, conclusions and judgment by the testimony which may be adduced, further than to give to it such weight as the Commission may think it is entitled to; provided, that when any railroad shall extend beyond the limits of this State and into another state in which a tax is levied and paid on the rolling stock of such road, then the said Commission shall assess, equalize and adjust only such proportion of the total value of all the rolling stock of such railroad company as the number of miles of such road in this state bears to the total length of the road as owned or controlled by such company.

"In determining the total length of the road of railroad company for the purpose of determining its tax assessment, the Commission is required to take into consideration the track which is operated partially under the control of the railroad under trackage agreements as well as that which is owned by the railroad, even though such trackage agreement does not provide for the exclusive use by the railroad of the track in order to require it to be taken into consideration.

"The Assessment of the rolling stock of the Petitioner was determined in accordance with Chapter 151, R.S.Mo., par-

ticularly Section 151.060-3, in that said assessment was determined by taking that percentage of the total value of all the rolling stock of the Petitioner that the number of miles of the trackage of Petitioner in this State bears to the total length of the road as owned or controlled by Petitioner wherever situated.

"Section 151.060-3 R.S.Mo., which prescribes the formula by which the Commission determined the assessed valuation on Petitioner's rolling stock in the State of Missouri, provides a fair and reasonable method to determine that amount of rolling stock of any railroad which extends beyond the limits of the State which may be taxed by this State and does not constitute a violation of any of the rights or privileges guaranteed by the Constitution of Missouri or the Constitution of the United States.

"This formula, as used in conjunction with the determination of value using depreciation and a forty-seven percent equalization factor together with the deduction of the economic factor as set out in the Findings of Fact, were used uniformly by the Commission to arrive at assessments of the rolling stock of the various railroads in this State, and to apply this formula to some railroads and not to others would be arbitrary and discriminatory.

"The evidence adduced by the Petitioner does not show that the valuation placed upon the rolling stock of Petitioner was grossly excessive, nor that such assessment resulted in an unlawful or unconstitutional taxation of any property of Petitioner, nor does the evidence adduced by the Petitioner show that in applying the formula herein indicated that the Commission acted in an unlawful, unfair, improper, arbitrary or capricious manner.

"DECISION

"The Commission, after giving due consideration and study to the records, evidence and data submitted on behalf of the Commission and studying the transcript of the proceedings before it, finds that the valuation of the Petitioner's property for the year 1965 should be as follows: Thirty-One Million Two Hundred Ninety-Eight Thousand Nine Hundred Thirty-Nine Dollars, ($31,298,939)."

Upon appeal to the circuit court the decision was affirmed without additional findings of fact or conclusions of law and, on this appeal, appellants "do not challenge the amount of the assessment of the fixed properties located in Missouri, but do challenge the manner in which assessment was made of the rolling stock, the amount of rolling stock apportioned to Missouri and the resulting excessive assessment of rolling stock." Appellants also do not question the total depreciated valuation of the entire rolling stock of N & W, $513,309,877, the method of depreciation, the 47 percent adjustment and equalization factor, and the $860,415 economic factor.

Appellants' contention is stated: "I. The Trial Court Erred in Affirming the Decision of the State Tax Commission, Its Findings of Fact and Conclusions of Law, and Its Assessment of Rolling Stock Against Norfolk and Western Railway, Because Such Assessment Contravenes the Due Process Clause (Section 1) of the Fourteenth Amendment to and the Commerce Clause (Article I, Section 8) of the Constitution of the United States and the Due Process Clause of the Constitution of the State of Missouri (Article I, Section 10), in That:

"(A) The Track Formula (Sec. 151.060 (3)) Was Arbitrarily and Erroneously Applied by the Commission As the Sole Method of Apportioning Rolling Stock to Missouri, Inasmuch As the Uncontradicted Evidence Established (1) a Grossly Uneven Distribution of N & W Rolling Stock Throughout Its Operations, and (2) That the Percentage of All Units, Located in Missouri at Any Given Time, Varied Substantially from the Percentage in Missouri of All Miles of Road of the Railroad.

"(B) The Tax Commission, by Its Use of the Track Formula, Alone, under the Facts of This Case, Apportioned to Missouri a Grossly Excessive Amount of Rolling Stock, with No Fair, Necessary, or Reasonable Relation to the Units of Rolling Stock Actually Present in Missouri on January 1, 1965, or to the Average Number of Units Regularly and Habitually Used in Missouri During 1964, or to the Value of Such Units.

"(C) The Tax Commission, by the Invalid and Improper Use of the Track Formula, Alone, under the Facts of This Case, Apportioned to Missouri a Grossly Excessive Amount of Rolling Stock, and Thereby Included in the Assessment Property with No Tax Situs in Missouri.

"II. * * * Because the Decision of the Commission, its Findings of Fact, and Conclusions of Law are not Supported by Competent and Substantial Evidence Upon the Whole Record."

The State Tax Commission of Missouri has the exclusive power of original assessment of railroads, railroad cars, and rolling stock, Section 138.420(1), V.A.M.S.; "all real property, tangible personal property, and intangible personal property, owned, hired or leased by any railroad company or corporation in this state, shall be subject to taxation," Section 151.010, V.A.M.S.; and "In assessing, adjusting and equalizing any railroad property * * * the state tax commission may arrive at its finding, conclusion and judgment, upon its knowledge, or such information as may be before it, and shall not be governed in its findings, conclusions and judgment by the testimony which may be adduced, further than to give to it such weight as the commission may think it is entitled to; provided, that when any railroad shall extend beyond the limits of this state and into another state in which a tax is levied and paid on the rolling stock of such road, then the said commission shall assess, equalize and adjust only such proportion of the total value of all the rolling stock of such railroad

company as the number of miles of such road in this state bears to the total length of the road as owned or controlled by such company", Section 151.060(3), V.A.M.S.

Appellants recognize that a state may impose an apportioned tax on the value of the rolling stock of a nondomiciliary railroad in the manner contemplated by the Missouri statutes, "that precision may not always be reached in taxing property of a foreign corporation which moves in interstate commerce," and they "make no claim that the track formula is per se invalid," thus limiting the question as to whether Missouri's method, Section 151.060(3), valid on its face, meets the test of reasonable or fair and workable apportionment in its application to N & W in this case. General Motors Corp. v. District of Columbia, 380 U.S. 553, 562, 85 S.Ct. 1156, 14 L.Ed. 2d 68; Norfolk and W. R. Co. v. State of North Carolina, 297 U.S. 682, 685, 56 S.Ct. 625, 80 L.Ed. 977; St. Louis Southwestern Ry. Co. v. State Tax Commission of Mo., Mo., 319 S.W.2d 559, 561 [1].

It has been repeatedly recognized in connection with statutes similar to Section 151.060(3) that an appropriate and constitutional method of assessment of an interstate railroad is to determine the value of the entire system "as a homogeneous unit representing a single profit-earning business," 51 Am.Jur., Taxation, § 877, and then to assign a percentage of that valuation to the taxing state according to some fair and reasonable method of apportionment. 84 C.J.S. Taxation § 426(c). The courts have long considered that the valuation of the entire rolling stock of railroads under a unit method of assessment and the apportionment of that value to the taxing state in the proportion the number of miles of railroad operated in the taxing state bears to the total mileage of railroad in the entire system, is an equitable and eminently fair method of arriving at an assessment of rolling stock. Pullman's Palace Car Co. v. Commonwealth of Pennsylvania, 141 U. S. 18, 26, 11 S.Ct. 876, 35 L.Ed. 613; Pittsburgh, etc., R. Co. v. Backus, 154 U.S. 421,

431, 14 S.Ct. 1114, 38 L.Ed. 1031; Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 174, 69 S.Ct. 432, 93 L.Ed. 585. The theory underlying such method of assessment is that rolling stock regularly employed in one state has an enhanced or augmented value when it is connected to, and because of its connection with, an integrated operational whole and may, therefore, be taxed according to its value "as part of the system, although the other parts be outside the state; in other words, the tax may be made to cover the enhanced value which comes to the property in the state through its organic relation to the system." Pullman Co. v. Richardson, 261 U.S. 330, 338, 43 S.Ct. 366, 368, 67 L.Ed. 682. See also Judson on Taxation, 2d Ed., §§ 258–268, discussing development of the unit method and mileage apportionment or "rule of entirety" as an acceptable method of valuation of interstate railroads; 2 Cooley, Taxation, 4th Ed., § 805, on the philosophy of taxation of railroad companies by mileage apportionment; and St. Louis Southwestern Ry. Co. v. State Tax Commission of Mo., supra, 319 S.W.2d 1. c. 562 [4, 5], describing the theory of Section 151.060 as being "that the rolling stock is substantially evenly divided throughout the railroad's entire system, and the percentage of all units which are located in Missouri at any given time, or for any given period of time, will be substantially the same as the percentage of all the miles of road of the railroad located in Missouri." And it has been held that such methods are not an "attempt to tax property having a situs outside of the state, but only to place a just value on that within." Adams Express Co. v. Ohio State Auditor, 165 U.S. 194, 227, 17 S.Ct. 305, 311, 41 L.Ed. 683.

■ Of course, even if the validity of such methods be conceded, the results, to be valid, must be free of excessiveness and discrimination. Caution in application of such methods has been suggested in many cases, for example. Braniff Airways, Inc. v. Nebraska State Board, 347 U.S. 590, 603, 74 S.Ct. 757, 765, 98 L.Ed. 967: "Property

in transit may move so regularly and so continuously that part of it is always in the State. Then the fraction, but no more, may be taxed ad valorem." Fargo v. Hart, 193 U.S. 490, 500, 24 S.Ct. 498, 500, 48 L.Ed. 761: "So long as it fairly may be assumed that the different parts of a line are about equal in value, a division by mileage is justifiable. But it is recognized * * * that if, for instance, a railroad company had terminals in one state equal in value to all the rest of the line through another, the latter state could not make use of the unity of the road to equalize the value of every mile. * * * The same principle applies to personal property which the state would not have the right to tax directly." Pittsburgh, etc., R. Co. v. Backus, supra, 154 U.S. 1. c. 431, 14 S.Ct. 1. c. 1119: "* * * there may be exceptional cases, * * * as, for instance, where the terminal facilities in some large city are of enormous value, and so give to a mile or two in such city a value out of all proportion to any similar distance elsewhere along the line of the road, or where, in certain localities, the company is engaged in a particular kind of business, requiring for sole use in such localities an extra amount of rolling stock." See also Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782; Rowley v. Chicago & N. W. R. Co., 293 U. S. 102, 55 S.Ct. 55, 79 L.Ed. 222; Union Tank Line v. Wright, 249 U.S. 275, 39 S. Ct. 276, 63 L.Ed. 602; Southern Ry. Co. v. Commonwealth of Kentucky, 274 U.S. 76, 47 S.Ct. 542, 71 L.Ed. 934; Hans Rees' Sons v. State of North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879; Kansas City Ft. S. & M. R. Co. v. King, 6 Cir., 120 F. 614, refusing application of mileage apportionment to accomplish obvious arbitrary or excessive results.

The stipulation and the findings and conclusions show that the commission did assess, adjust, and equalize, as required by statute, Section 151.060, and in keeping with a reasonable exercise of the philosophy of the unit method and mileage apportionment there provided. The commission ascer-

tained the depreciated value of the rolling stock of N & W as of January 1, 1965, from the return filed by N & W pursuant to Section 151.020. That value was obtained by application of an allowable depreciation of five percent per year with a maximum of 75 percent against the original cost. To the resulting figure, $513,309,877, the factor of 47 percent, used to equalize all railroad property in Missouri, was applied to equalize the total or entire value of N & W rolling stock with the valuation of other properties in Missouri. A percentage was then obtained by determining the proportion the mileage in Missouri, 627.61, bore to the total mileage in the N & W system, 7577.55. The proportion thus obtained, 8.282 percent, was then applied to the equalized value of N & W rolling stock to determine the amount of N & W property subject to taxation in Missouri. This amount was further adjusted by deduction of an economic factor of $860,415 from the assessed valuation of fixed and movable property of N & W in Missouri and resulted ultimately in the valuation of N & W rolling stock of $19,981,757. The total process thus described constitutes the assessment of N & W, all as required and provided by Section 151.060, and such assessment was made in the same manner as for all other railroads in Missouri.

Appellants introduced evidence before the commission to show that the *average* depreciated, equalized value of rolling stock regularly used in Missouri in 1964 and on January 1, 1965, was $7,014,723 and that, while 8.2824 percent of all N & W miles were in Missouri, only 2.71 percent of all N & W units having 3.16 percent of the total depreciated, equalized value of N & W rolling stock was in Missouri on January 1, 1965. Such evidence came from exhibits showing the employment by N & W of most of its coal-hauling equipment in hauling coal from Virginia, West Virginia, and Kentucky to the eastern ports and manufacturing centers and to the Great Lakes region. Similar exhibits showed that part of the system originally operated as Wabash

to be utilized mainly for hauling general merchandise between Missouri and Iowa and the east, with but a small portion of coal hauling in that area. Exhibits also showed the depreciated values of equipment belonging to the individual railroads prior to the leases and merger which put together the N & W system. These, of course, showed that the bulk of the coal-hauling equipment now in the total system came from those roads which originally served the coal-producing and demanding areas prior to the merger of all the roads into a more comprehensive and diversified system which now employs its entire rolling stock to meet the demands of a larger system serving a greater area. Other exhibits showed that the leases and merger brought about no increase in the average amount of Wabash, N & W, Nickel Plate, and P. & W. V. cars in Missouri.

Use of the average number of units in the state has been held to be a fair method of assessment of interstate rolling stock, Central R. Co. of Pa. v. Commonwealth of Pennsylvania, 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720; Marye v. Baltimore & O. R. Co., 127 U.S. 117, 8 S.Ct. 1037, 32 L.Ed. 94; American Refrigerator Transit Co. v. Hall, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899; however, figures thus obtained are not conclusive on whether the N & W assessment for 1965 based on mileage apportionment is unconstitutional, arbitrary, or grossly excessive. Nor are the figures of 2.71 percent of the total rolling stock constituting 3.16 percent of the total value conclusive on the matters of substantially even division of rolling stock and mileage throughout the system because, quite obviously, they do not recognize any justified enhanced or augmented value to the portion actually in Missouri brought about by being merged into the entire N & W system. See Union Tank Line Co. v. Wright, supra, 249 U.S. 1. c. 282, 39 S.Ct. 1. c. 278: "While the valuation must be just it need not be limited to mere worth of the articles considered separately but may include as well 'the intangible value due to what we have called the or-

ganic relation of the property in the state to the whole system.'" In Pittsburgh, etc., R. Co. v. Backus, supra, the assessed railroad was created between April 1, 1890, and April 12, 1891, by merger of several existing roads. Prior to the merger, the Indiana portion of the merged property had been assessed at $8,538,053, and the postmerger assessment was $22,666,470, approximately the same increase as that involved here. Complaint of unconstitutional valuation was attempted to be supported in much the same manner as here and was answered: "Still, it must be borne in mind that a mere increase in the assessment does not prove that the last assessment is wrong. Something more is necessary before it can be adjudged that the assessment is illegal and excessive, and the question which is to be now considered is whether the testimony shows that the assessment made by the state board can be adjudged illegal." 154 U.S. l. c. 432, 14 S.Ct. l. c. 1119.

Much of appellants' argument is based on comparisons of the Missouri portion of the original Wabash system to the total Wabash system prior to the lease to N & W, but surely the parties to the leases and merger thought that the merged system would be more valuable than its component parts. Otherwise, common sense would suggest they remain as separate, smaller, nonintegrated entities, and it makes equally good sense for the coal-hauling equipment to be continued in the area where it is most needed. Consideration of the total value of N & W rolling stock, including its coal-hopper cars and coal-region diesel engines, in arriving at the valuation of that part of the N & W system in Missouri is not like the situations presented, for example, in Wallace v. Hines, supra, where the cost of building railroads in neighboring mountain states was out of proportion to the cost of construction in North Dakota, the taxing state; in Union Tank Line Co. v. Wright, supra, where the number of cars of a New Jersey tank-line company claimed by Georgia bore no relation to the percentage Georgia's railroads bore to all railroads in

the country; in Fargo v. Hart, supra, where bonds of an express company in New York bore no relation to the valuation of the company's express business in Indiana; and in Pittsburgh, etc., R. Co. v. Backus, supra, recognizing the exceptional case of terminals of enormous value in one city out of all proportion to any other distance on the line, and the use in certain localities of a particular kind of business requiring an extra amount of rolling stock for that part of the line only. An example of the last suggestion might be the employment in a mining operation of narrow gauge rails and cars which could not be used throughout the entire system.

Appellants' figures also showed that the depreciated value of rolling stock previously owned by Wabash alone would be $82,456,-813, as compared to $241,255,643 for the entire merged system. They concede that if, on the 1965 return, the commission had applied the formula to the Wabash part of the system and properties alone, the assessment would have amounted to $10,103,340. Certainly, no unconstitutional disproportion is revealed in an assessment of $19,981,757 against a total valuation of $241,255,643, when compared to $10,103,340 assessed against $82,456,813, and such proportion in no way approaches the differential of 600 percent criticized in Union Tank Line Co. v. Wright, supra. See also Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, where an assessment of $23,996,604.14 was held not excessive in comparison to the railroad's figure of $16,021,296.

The decision of the state tax commission must, of course, be supported by competent and substantial evidence upon the whole record. Drey v. State Tax Commission, Mo., 345 S.W.2d 228. In this case the decision receives ample support from those items taken directly from appellants' statutory return of properties used in connection with mileages both within and without Missouri, "habitually, constantly and regularly used as an essential part of Norfolk and

Western Railway Company within the meaning of Section 151.060." The evidence was also such as to give the commission substantial knowledge and information on the scope and type of operation conducted by N & W as well as the manner in which the operation measured by the Missouri mileage fits into the entire N & W scheme. Under the authorities that is sufficient because "(t)here is no such thing in assessments as an absolute 'true value,' and an assessment is, at best, a mere estimate; a presumption exists that the assessed valuation is correct, and the courts have no right to substitute their judgments, as such, for the values fixed by the assessor or by reviewing boards * * * and a taxpayer has the burden of establishing a discrimination." Cupples Hesse Corp. v. State Tax Commission, Mo., 329 S.W.2d 696, 700 [3–6]. Such presumption is rebuttable, of course, Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 693 [3], but it is not sufficient to assert that use of the track formula alone could well result in a "figure approximating the value of the property actually in the state" without demonstrating that or similar situation to be the case. The commission noted in its decision its prerogative of judging credibility of witnesses, and it was free to weigh, determine relevancy, and disbelieve appellants' evidence on the issues presented. May Dept. Stores Co. v. State Tax Commission, Mo., 308 S.W.2d 748, 761 [16]. It is not necessary to analyze further all the evidence or to point out all the permissible inferences, it being sufficient to say that a formula alone was not the only item available to the commission's consideration. "The noted evidence and its reasonably per-missible inferences establishes the presence of other factors and, in short, substantially supports the order and finding of the commission." State ex rel. Platz v. State Tax Commission, Mo., 384 S.W.2d 565, 568 [7].

Judgment affirmed.

WELBORN, C., concurs.

HOUSER, C., not participating.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY and HYDE, JJ., and STORCKMAN, Alt. J., concur.

HOLMAN, P. J., not sitting.

ORDER

The Supreme Court of the United States having vacated the judgment of this court affirming the judgment of the circuit court of Cole county and having remanded the cause to this court for further proceedings,

It is ordered that this cause be, and it is hereby, remanded to the circuit court of Cole county with directions that it remand the cause to the Missouri State Tax Commission for further proceedings not inconsistent with the decision of the Supreme Court of the United States handed down March 11, 1968, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201.