# IN THE OREGON TAX COURT

## SOUTHERN PACIFIC TRANSPORTATION COMPANY
*v.*
## DEPARTMENT OF REVENUE
(TC 1093, 1189, 1282, 1362)

John H. Doran and George L. Kirklin, Portland, represented plaintiff.

Elizabeth S. Stockdale and Dave L. Canary, Assistant Attorneys General, Department of Justice, represented defendant.

Decision for defendant rendered May 13, 1985.

**CARL N. BYERS, Judge.**

These cases are before the court on remand from the Oregon Supreme Court. By opinion handed down May 24, 1983, the Supreme Court reversed the Tax Court and held that

the Southern Pacific unit does include the St. Louis and Southwestern Railroad (Cotton Belt). In its opinion, the Supreme Court indicated that "on remand, the Tax Court shall consider whether the valuation and allocation formula should be adjusted." This instruction reflects the concern of the court that its decision may affect the allocation formula which "must fairly reflect the contribution of each state's component."

At a pretrial conference held August 9, 1984, before The Honorable Samuel B. Stewart of this court, the parties agreed that there was no need to revise the valuation formula. However, plaintiff requested and was granted permission to submit revised allocation formula and computations. Plaintiff subsequently submitted such formula accompanied by a motion to reopen the proceeding. Defendant submitted a memorandum in opposition to both the proposed revised allocation formula and plaintiff's motion to reopen the proceedings. By order dated November 14, 1984, The Honorable Edward H. Howell, Judge Pro Tem of the Oregon Tax Court, denied plaintiff's motion to reopen the proceedings. Subsequent thereto, the parties have filed briefs on the issue of the allocation formula.

■　　　The issue of the allocation formula must be considered in the context of the unit approach to valuation applied here. A necessary effect of the decision of the Oregon Supreme Court to include the Cotton Belt in the plaintiff's system is a determination that the whole comprises one system which should be valued as such. In other words, the complexity and interdependency of the various parts make it impractical to separately evaluate the parts. The worth or value of a part is found as much in its relationship to the whole as in its existence. As expressed by Alfred A. Ring, *The Valuation of Railroads and Public Utilities for Ad Valorem Tax Purposes* ch 27 (unpublished) 27-2:

> "The soundness of the logic underlying unit valuation can best be illustrated by reference to the worth of a human being, as a whole rather than as a summation of the value of the parts that comprise the body. What is the value of a good pitching arm, swift feet, or even a good head, if the heart of the individual under value study is about to fail? Railroads and public utilities are more than a summation of lumber, steel, brick and mortar. They are going concerns that succeed or fail as a

'whole.' Thus value of the *unit* is primary and value of the parts inferred by allocation secondary."

Once having ascertained the total value of the unit, that value must then be allocated to the various taxing jurisdictions in which it is located. In this case, the system extends from Oregon to Louisiana and Illinois. Each taxing jurisdiction is entitled to its share of the value of the system. The total of all the shares of value allocated to the states should not exceed the total value of the system.

■ The standard allocation formula developed by the National Association of Tax Administrators (NATA) employs three factors. Those factors are (1) property, (2) line-haul miles, and (3) terminal activity. The property factor, which is based on ICC costs, is intended to reflect proportional cost or investments in the system. The factors of line-haul miles and terminal activity are designed to reflect use or functioning of the system. These factors are then weighted according to their proportional operating expenses which, again, are somewhat related to activity. It appears that the underlying theory supporting use of the formula is that activity or use is related to the value of the part to the whole.

Inasmuch as it is the use of property which produces profits which in turn create value, allocating value based on use as well as cost of property seems reasonable. Harking back to Ring's analogy to the human body, if a person were to be valued based on an activity involving the eyes, hands and brain, the formula would deem those parts of the body more valuable than other parts. This is not to say that the feet or the seat, which merely rest, are without value but that their contribution is not as great.

At the conclusion of the trial in this case, the court accepted plaintiff's use of the NATA allocation formula. In doing so, it rejected the allocation formula proposed by the Department of Revenue appraiser, which formula departed from the NATA formula. However, with the inclusion of the Cotton Belt in the taxable unit, plaintiff now seeks to revise its allocation formula. Plaintiff's position is that the more profitable Cotton Belt necessarily has greater value and therefore an allocation formula which fails to recognize that greater value would be unfair.

■    Profitability alone is not an adequate test. *Nashville C. and St. L. Railway v. Browning,* 310 US 362, 60 S Ct 968, 84 L Ed 1254 (1939). The unit concept recognizes that there is an "organic" relationship between the parts, the value of which cannot be adequately reflected even under a separate accounting system. The inadequacy of plaintiff's approach can be illustrated by considering what value is to be allocated to a part which is unprofitable but performs a necessary function. Under plaintiff's view, if separate accounting showed a part to be unprofitable, little or no value should be allocated to it. However, if that part and its function were removed from the system, the highly profitable portion of the system would become less valuable and perhaps also unprofitable. The evidence in this case indicated that terminal activities are less profitable than line hauls. Nevertheless, without the terminal activities, the Cotton Belt might be far less profitable. The very nature of the unit approach to valuation recognizes that it is impractical to allocate value based on piecemeal profitability.

The proper test for consideration in allocating the values of the system among the various states is whether the property throughout the system or unit is substantially similar. Doctor Schoenwald's report, by which plaintiff proposes an adjusted allocation formula, recognizes that the NATA formula components are:

> "Not intended to measure relative profit contribution, but are intended instead merely to measure relative quantity (not quality) of investment and activity. While this aspect of the formula is not material when the unit in question consists of property with generally *similar characteristics* it produces distortion when it is applied to a unit comprised of *dissimilar properties,* as in the present case." (Plaintiff's Brief on Remand, at 28.) (Emphasis added.)

The similarity sought by the law is in the kinds of property located in the respective states, not their profitability. In *Fargo v. Hart,* 193 US 490, 24 S Ct 498, 48 L Ed 761 (1904), the court gave the illustration of a state which contained miles of track but no terminals while another state had a number of valuable terminals. In such a case, the first state would not be entitled to rely on a mileage formula because its application would cause some of the value of the

terminals to be included in its taxable value. This is essentially the holding of *Norfolk & Western R. Co. v. Missouri Tax Com.*, 390 US 317, 88 S Ct 995, 19 L Ed 1201 (1968).

In this case, the record shows that the Cotton Belt consists of trackage, trackage rights, rights-of-way, station grounds, stations, cars, locomotives and work equipment, described by plaintiff's witness as a "viable interstate railroad." (Tr 472.) It does not have expensive terminals or other properties which are "dissimilar" from the rest of the unit. Consequently, the increase in the value of the Oregon property is not a "shift" in value but merely a reflection of the enhanced value which inures to the whole system by including the Cotton Belt portion.

This being the case, there is no reason to depart from the NATA formula as originally proposed by plaintiff and as accepted by the court. Accordingly, the court, therefore, finds that the allocation formula need not be adjusted. In view of this finding, the court will withhold its judgment in order to permit plaintiff to submit computations pursuant to the court's determination of the issue. Tax Court Rule 67 shall be followed.